Good morning, Judge Gould. Good morning, Your Honors. Howard Shapiro, the Proskauer Firm, on behalf of all Charles Schwab defendants, I would like to argue for 12 minutes and reserve three minutes for rebuttal, please. Please watch the clock. I will do just that. Your Honors, defendants ask this Court to reverse the District Court in order that the case be dismissed below and sent to arbitration pursuant to the Employment Dispute Resolution Rules of the American Arbitration Association for the consideration of Mr. Dorman's individual claims, because that is what the parties agreed to contractually. The District Court's opinion should be overturned for reasons stated in our brief, but more particularly in light of intervening authority since the District Court's decision in the Supreme Court case Epic Systems and this Court's decision in Monroe v. USC. There are two very specific points that I want to make to the Court this morning. The first, again correlating with the FAA, is that the plan arbitration language clearly covers this dispute. Could I interject and just ask a threshold question? Yes, Your Honor. In Monroe, which you just mentioned, we left open the question whether Amaro was overruled or not. So are we required, and we've dodged that issue in a number of cases, so are we required to overrule Amaro in this case to say Amaro is superseded by Supreme Court precedent in order for you to get the relief you're looking for? Your Honor, we believe that Amaro is superseded by Supreme Court precedent. We also believe that this Court has already spoken to the Laboratory Corporation, where the Ninth Circuit specifically approved, admittedly, Your Honors, without mention of Amaro, that arbitration was proper. That case was remanded for other reasons involving whether there was notice as part of a claim review dispute. But Chappell clearly stands for the proposition that the Ninth Circuit recognizes ERISA arbitration as proper. In Monroe, we expressly left that question open. We said we don't have to reach that. I'm sorry, I didn't catch the last part. In Monroe, we said we don't have to reach the question whether Amaro is superseded. That's why I was concerned. I believe, Your Honors, that the clear precedent from the Supreme Court would serve as an ample basis to overrule Amaro. But I believe that this panel need not go there because, as I have noted in Chappell, and there are some other Ninth Circuit opinions on arbitration of ERISA matters that defendants cited in their briefs. Okay. I didn't see the Supreme Court directly ruling on arbitration for ERISA. Is there one that I should be aware of? There is not, Your Honor. Okay. But it's pretty clear. But the Supreme Court has looked at analogous statutes, such as the Age Discrimination Employment Act, which in itself says, as part of the statute, you may bring a collective action. The Fair Labor Standards Act, which itself also anticipates a collective action under 216B of the 29 U.S.C. 216B. In Epic Systems v. Lewis, the Court has held that every effort to invalidate statutes on the basis that class action waivers are not enforceable has failed. And that's true of the Sherman Act, the Clayton Act, the Age Discrimination and Employment Act, the Credit Repair Organizations Act, the Securities Act of 1933, 1934, and you can find that, Your Honor, in Epic Systems, where the Court describes all of the other federal schemes where a class action waiver is appropriate. Well, that may be the case, but isn't the matter that we're talking about today that regards an ERISA plan slightly different, at least in consideration of whether or not the individual is bringing a claim on behalf of him or herself versus the plan? And that would distinguish it from those cases that you listed, wouldn't it? Respectfully, Your Honor, if the Court considers Gilmer, I would disagree with that. But the Court doesn't have to reach that, because even though the plaintiff brings a claim on behalf of the plan, as we know in LaRue, he does not necessarily bring a claim on behalf of every person in the plan. LaRue ---- So in Monroe, though, we said, it seemed, as I understand Monroe, it said a participant can bring a claim on an individual basis or it can bring a claim on a representative basis. And as I understand opposing counsel's argument, they're saying if an agreement, if the Schwab plan arbitration agreement waives the right to bring a claim on a representative basis, then it runs afoul of, I guess it's 1110, which says, any provision in an agreement which purports to relieve a fiduciary from responsibility shall be void as against public policy. So that's their lead argument. How do you respond to that? I'm glad to. Your Honor, under 409A, a claim is brought in a representative capacity in the sense that it is brought on behalf of the plan. The relief goes through the plan, that's what makes it a 409A claim, and then is allocated into the individual's participant's account balance. LaRue, 128 Supreme Court at 1025, recognizes this specifically because what the plaintiff is trying to say is that he has the right to bring relief on behalf of all of the participants under the entire plan. But the Supreme Court in LaRue states specifically, and I quote, our references to the entire plan in Russell, dot, dot, dot, are beside the point in a defined contribution context. Other sections of ERISA confirm that the entire plan language from Russell, which appears nowhere in section 409 or 509A, is also 282, does not apply to defined contribution plans. Think of representative in this sense, Your Honor. A trustee brings a claim as a representative as an estate, of the estate. The relief flows through the estate to the individual. A parent brings a claim on behalf of her child. The relief flows through the parent to the child. That is what representative means in the ERISA context. So if the participant can bring a claim, which I think is what we said in Monroe, if a participant can bring a claim on behalf of the plan in a representative manner and say, for instance here, the fiduciary erred by including Schwab plans in the menu of potential investments and the plan was injured wherever any participant invested in one of those Schwab plans, that would be representative on behalf of the plan. The plan was injured by the fiduciary's actions with respect to all of the different participants. So why, so the agreement would require the participant to waive the ability to bring that specific action. And that is my point about LaRue, Your Honor. LaRue recognizes what the statute says. The statute does not say. Well, could you talk about Monroe, though? Because I understand LaRue cut back on Russell. I understand. But in Monroe, we revived Russell. And what Monroe talks about there is it's talking about the claims that the employees bring from alleged fiduciary misconduct as to the plan, and I am at 896 Fed 3rd at 1094. And what is being discussed there is why that individual employment arbitration agreement cannot bind the plan. That is a different issue, Your Honor, than saying and creating a right for a participant to bring automatically, to bring suit or to say representative means a collective or mass action on behalf of everybody in the plan. That's not what the statute says. LaRue confirms that, and this plaintiff in signing an arbitration agreement and the plan in agreeing to have an arbitration agreement agreed to resolve these claims individually. Still the Department of Labor can bring the collective claim and Gilmer itself, Your Honor, where it addresses why, even though the age discrimination in employment statute, specifically countenance bringing a collective claim, ERISA does not specifically state that a plaintiff may bring a collective claim. Gilmer says, Your Honor, that even there a class action waiver is enforceable under the FAA. But they don't have this 29 U.S.C. 1110A, which says if it purports to relieve a fiduciary from responsibility, it's void. The provision in the agreement is void. I'm sorry, Your Honor, I interrupted you. My apologies. What is being said in 410A is yes, the fiduciary must make good to the plan, but it doesn't say for every participant, and it does not say collectively. And one of the problems with what plaintiff is arguing here, to overcome the FAA's presumption in favor of arbitration, there must be an express congressional command that interdicts this type of class waiver. There's no such express command in the statute. LaRue points that out, and Your Honor has already recognized this in her dissent in Morris. I regret I am into my rebuttal time now, and I will — But before you go, I'd like to know how you respond. Your 28J letter brought to the court's attention LAMPS, and you saw what was written. What's your response to — On LAMPS, LAMPS stands unequivocally for the proposition that any ambiguity must be made construed in favor of arbitration. And I'm not asking you to tell me what LAMPS stands for, but to respond to the allegation that it's irrelevant to this appeal. I think it's highly relevant, because if the court were in any way concerned with ambiguity about the arbitration provision, the precedent of the Supreme Court is that arbitration agreements are favored and ambiguities are resolved in favor of arbitration. Thank you, Your Honors. Thank you, Judge Gould. Good morning, Your Honor. May it please the Court, my name is James Bloom from Schneider Law. The defendants ask the court to rule that an arbitration provision limits the statutorily defined liability of an ERISA fiduciary. Defendant's argument faces three insurmountable problems. The first is the language of the statute. ERISA defines a fiduciary's liability as any losses suffered by the plan, as this Court recognized just last year in Monroe v. USC. And ERISA contains an express provision that categorically invalidates any agreements that would reduce a fiduciary's liability. That's Section 1110 of the United States Code. So opposing counsel says the agreement in this case that precludes the participant from making a representative action doesn't relieve the fiduciary from liability. I guess the part of the argument would be, I guess every participant could sue on behalf of their individual plan, which is what was contemplated in LaRue. So it merely picks a procedure as opposed to shields a fiduciary from liability. So why, what's your response to that? Well, I think there are a few issues there, Your Honor. One is that the language of the statute itself, ERISA Section 409, specifies that a fiduciary is liable for quote, any losses suffered by the plan. And it was picking up on that language that the Supreme Court in Mass Mutual v. Russell held that a plaintiff must bring their claims in a representative capacity on behalf of the plan. The other part of that is that Section LaRue cut back on that. I mean, Russell's language was pretty broad and expansive, and LaRue said, well, we didn't really mean that. Well, respectfully, Your Honor, I think that LaRue held something slightly different than that. In LaRue, the Fourth Circuit held that every single participant in the plan had to suffer a loss from the fiduciary breach, or else there could be no claim under ERISA at all. So the Supreme Court reversed that and held, even if a fiduciary breach affects less than all of the participants in the plan, there's still an action. Well, that was a defined — and it goes into this, this is a defined benefit plan, and so nobody's hurt until the pool of money is too small to pay everyone, and that's why it's always going to be representative. And then in LaRue, the Court said, well, that was then, this is now, now we have these defined contribution plans, different rules apply, and a participant can bring a suit under 1132A2 for losses to his own account. I think that's right, Your Honor, but LaRue clarified that we therefore hold that although Section 502A2 does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. Now, the same issue, the same argument that the defendants are making here, as you noted earlier, was raised by the University of Southern California in the Monroe case just last year. And in that case, this Court held LaRue cannot bear the weight that USC places on it and interpreted LaRue as, quote, making clear that it had not — the Supreme Court made clear that it had not reconsidered its long-standing recognition that it is the plan and not the individual beneficiaries and participants that benefit from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan. Now, the — But did not say that the — well, which it could not, that the action must be representative, because LaRue had said that it can be individual, though Monroe seems to hold open the possibilities as it could be either, as sort of the participant's call. Is that right? Isn't that right? I don't think it's — I don't think that's quite right, Your Honor. I think that LaRue said that it's still a representative action on behalf of the plan, even if the total losses suffered by the plan are just in one participant's individual account. So — Was that the holding of LaRue, that the losses were only in one person's account? I didn't see that in LaRue. LaRue said you — the individual could sue for losses to his account. I didn't see a ruling that those were the only losses that had occurred. Right. In LaRue, the participant had requested money be moved out of his account into a different investment option, and that request was not apparently executed by the plan fiduciary. So the Supreme Court withheld a ruling on whether that was a cognizable breach of fiduciary duty, but the facts there are facts that apparently would only apply to that one account, even though it's a fiduciary breach. So I think that LaRue doesn't stand for this sweeping change. Now, Monroe is consistent. The Second, Third, Seventh, and Eighth Circuits have reached the same reading of LaRue that this Court did in Monroe. Those cases are cited in our answering brief at 23 Note 2. To date, not one appellate court has read LaRue as authorizing this separate level of relief. I think that a more fundamental problem for defendants is that even if LaRue authorized a choice, even if it authorized participants to seek less than the relief defined by Section 409, that Section 410 would preempt any attempt to require them to do that. That would cut back on the fiduciary's potential liability. Regarding your answering brief, you bring up positions, arguments that weren't made in the court below, and I think you know from the reply, and it's probably an accurate statement, that you seem to retreat from the trial court's decision. And my question for you is, have you waived the arguments you make now because you didn't make them earlier? No, Your Honor. I think that the district court got it right. The district court ruled that neither of the arbitration provisions at issue apply to these claims, and that even if they did, ERISA Section 410 would prohibit these sort of preloaded, predetermined reductions in the fiduciary's liability. But you must acknowledge that EPIC overrules, I think explicitly, at least one portion of the district court's ruling. Yes, Your Honor. We acknowledge that in our brief. So your position is you haven't waived those arguments, even though they appear to be made for the first time before this Court? I apologize, Your Honor. Just to clarify, the EPIC system's argument did overrule a portion of the district court's opinion. The other arguments that we've made are consistent with the arguments that we made below about ERISA Section 410 and about the Federal Arbitration Act, which in and of itself prohibits enforcement of arbitration agreements that would reduce statutorily defined liability. That's from the Mitsubishi Motors case. We did advance that argument below. The district court didn't need to reach that because of the ruling on ERISA Section 410 and the ruling that the arbitration agreements didn't apply. So I think that, responding to a few of the points that the defendants have made, one key distinction in their reply brief at page 18, the defendants say, neither Dorman nor the district court cites a single decision holding an agreement to arbitrate fiduciary breach claims violate Section 410A. And that's not quite right. In Kramer v. Smith-Barney, AD F3-1080, which is cited in our papers, the Fifth Circuit was confronted with an agreement to arbitrate a fiduciary breach claim that contained a statute of limitations that was in ERISA Section 1113. And the Fifth Circuit had no hesitation in striking that statute of limitations, the shorter one, from the arbitration provision, because enforcing arbitration on that basis would violate ERISA Section 410. Now, an important distinction between Smith-Barney and this case is that here the arbitration agreements don't permit arbitration on the basis described in ERISA Section 1113. ERISA Section 409, seeking any relief for the plan. So in Kramer, they struck that shorter statute of limitations for violating 410 and nevertheless sent the case to arbitration because the arbitration provision permitted that. Here, the parties are in agreement that the arbitration agreements do not permit arbitration on the plan-wide basis. So, for example, the defendants argued to the court below should the court nevertheless conclude that Dorman cannot be limited to pursuing individual claims for relief in arbitration, the court must deny the motion to compel and adjudicate Dorman's claims in court. The plan document expressly requires as much. That's from their motion to compel arbitration at 16, note 14, which is page 23 of the supplemental excerpts of the record. And I think that the defendants are only looking for arbitration here if they get the reduction in liability. That's the sole motivation for their motion. If they don't get that liability reduction, they demand to stay in court and have the claims heard in court. The parties agree that certainly arbitration here is not permitted under the language of the plan document or the compensation agreement on a plan-wide basis. So did the fiduciaries making available the Schwab investment vehicles hurt participants who didn't invest in them? So let me understand what you mean by shielded from liability. So was every participant hurt? So in a defined benefits plan, this is what Russell and LaRue said, everyone is hurt when the pool of money is reduced. In the defined contribution plan, which is what LaRue was looking at, only those individuals who were hurt are hurt. And so in this case, the allegations, does it hurt everyone and all of the participants in the plan or just those who are hurt, just those who invest? I don't want to get out ahead of myself here because I think that there may be an open issue in discovery in this case, which is ongoing. But it was certainly the great majority, if not all of the participants in the plan, were affected by this conduct. This was not just Schwab investment options. There were a variety of fees that were charged to participants that are at issue that went to other Schwab affiliates. And we're still working to understand exactly how those fees were distributed among plan participants. But ultimately, I mean, I think that Monroe considered the same argument about LaRue that the defendants make here. I mean, I found helpful, you know, in Monroe, this court said, even if LaRue held the meaning that USC attributes to it, it would not control this case. The claims brought by the participants arise from alleged fiduciary misconduct as to the plans in their entireties and are not, as in LaRue, limited to mismanagement of a single individual account. Though in that case, I think we held that the plan had not agreed to arbitration. Isn't that right? So it's here the plan had agreed. Well, I think we would disagree with the analysis that the plan has agreed here. There's a longstanding distinction in the Supreme Court case law and this court's case law between an action taken by a plan fiduciary, which is an action by the plan, and an action taken by the company that sponsors the plan, which is a settler function. And these settler functions, this is, for example, in the Supreme Court's Lockheed or Pews Aircraft cases, are not subject to fiduciary duties. They're not taken by the plan. They're taken by the company acting as a plan sponsor, which is not traditionally subject to ERISA. So there's nothing in the record here that shows a plan fiduciary ever implemented that settler decision. That's an example of an argument made in your answering brief, but not a position made before the trial court. What you just said, that the plan sponsor, not the plan fiduciary. I don't, Your Honor, I apologize. Well, it seems to be important that that position be observed by this court, but it's a position that was made in your answering brief, but not to the trial court. Right. I think that part of what happened is that the LaRue decision came out after the district court denied the motion initially. And so I think that both sides' arguments have changed now that this court has spoken on these issues. I think that it's fairly clear that the plan has not consented. I mean, that's a failure of, that's just a failure of a basic piece of evidence. Of course, I think we would take the position that even if the plan did have a fiduciary liability of the sort that the defendants are talking about here, that's exactly what Congress had in mind when it passed versus Section 410, you know, Section 1110 of the U.S. Code. Okay. I think we have your argument. Thank you. Thank you. Good morning again, Your Honors. Some very brief points. First of all, there's this concept being advanced incorrectly by my learned opponent that in some way this class action waiver limits liability. That point, of course, has been rejected by the Supreme Court in Italian Colors, in Gilmer, and in many other cases. But here a planned fiduciary is still liable to make good to the plan for any losses resulting from a breach of fiduciary duty. Those losses can be recovered through individual arbitration, just like in Italian Colors, Your Honor. It's important also to understand what's at stake here. And the class action waiver is what's at stake. But think of how an ERISA case works. A plaintiff brings a claim on behalf of the plan for his or her account. If the plaintiff succeeds, then the plaintiff certifies the class. The plaintiffs here have moved for class action treatment. They haven't just filed this under A2. If the questions of law are common and typical, a class is certified. But if the questions of law are not and the class certification is denied, the relief flows through the plan to the individual plaintiff. That's not in any way a denial of liability by the fiduciaries. As to the plan issue, Your Honor, how plans work is a plan sponsor writes the terms of the plan. There's still no showing that 410 or any other part of ERISA has been violated here. There's no showing that there's some contrary congressional command that would preclude a class action waiver here. And then, of course, Your Honor, the plan fiduciary is obligated to follow the lawful terms of the plan. I regret I am out of time. Thank you very much, Your Honors. We thank both sides for their argument in this interesting case. And the case of Michael Dorman v. The Charles Schwab Corporation is submitted.
judges: Gould, Ikuta, Pearson